## A02A2396. BYRD v. THE STATE.
(576 SE2d 35)

BLACKBURN, Chief Judge.

Following his convictions by a jury of rape and false imprisonment, Joseph Byrd appeals, arguing that: (1) the evidence was insufficient to support his rape conviction; (2) he did not receive effective assistance of counsel; and (3) the trial court erred in admitting irrelevant evidence. Finding no merit in these asserted errors, we affirm.

1. Byrd contends that the evidence was insufficient to support his rape conviction, because the State failed to present any physical evidence of genital or vaginal trauma to the victim. We disagree.

---

[6] Id.
[7] *Gibbons v. State*, 248 Ga. 858, 864 (286 SE2d 717) (1982).
[8] See *Weeks v. State*, 187 Ga. App. 307, 308 (1) (370 SE2d 344) (1988).
[9] See id.

> [I]t is not the function of an appellate court to weigh the evidence, determine witness credibility, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, the evidence must be viewed in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation omitted.) *Dominguez-Vega v. State.*[1] See *Jackson v. Virginia.*[2]

A person commits rape when he has carnal knowledge of a woman forcibly and against her will. OCGA § 16-6-1. Viewed in a light most favorable to the verdict, the record shows that Byrd and the victim were married in 1983, had three children, and were subsequently divorced. Though the victim remarried, she and Byrd saw each other frequently, and she and her husband often helped Byrd by giving him food, money, transportation, employment, and even, on occasion, a place to stay.

On June 10, 1996, Byrd called the victim and asked her to pick him up and drive him on various errands. After buying dog food, Byrd asked if she could drive to his house so that he could feed his dogs; the victim agreed but asked Byrd to drive. She and Byrd drank on the way to the house.

When they got to the house, Byrd got out to feed the dogs, and the victim knelt beside the van and urinated. As she was pulling up her pants, Byrd came up behind her and tried to pull down her pants. The victim resisted, and a struggle ensued in which Byrd choked her and knocked her to the ground. He put his knee in her back, pulled her hands behind her, and then tied her hands behind her back with a black cord or piece of rope. Pulling off her pants and ordering her to her knees, Byrd raped the victim and then attempted, without success, anal intercourse.

Byrd asked the victim if she was going to tell anyone what he had done and told her he had a knife. She told him that she was not going to tell anyone but just wanted to go home. Byrd then told her he had a handgun.

When the victim reached home, she said nothing about the rape, knowing that both Byrd and her husband had guns and fearing that one of her children might be hurt in any altercation. As soon as Byrd left, the victim told her husband about the rape, and he took her to the hospital.

The nurse who first examined the victim testified that the victim

---

[1] *Dominguez-Vega v. State,* 253 Ga. App. 562 (1) (560 SE2d 56) (2002).
[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"was probably one of the most devastated people I have seen come in emotionally." The emergency room doctor who examined the victim observed redness under the victim's chin and marks on her wrists and noted that the victim complained of pain in her throat, wrists, and lower back. The doctor testified that she found nothing in her examination of the victim which would contradict the victim's story that she had been raped and entered a diagnosis of rape on the admission form.

The detective who investigated the case also testified that she observed ligature marks on the victim's wrists and a reddened area under her chin and around her neck. She also stated that she observed an unusual kind of grass or straw in the victim's pubic hair and that similar grass or straw was found at the scene of the rape. A police officer sent to the rape scene by the detective to search for evidence found a black rope or cord which, the victim testified at trial, was similar to the one used to tie her hands.

The State also presented similar transaction evidence from another victim. She testified that in October 1994, she had run into Byrd at a party and then walked with him in the woods. At some point, Byrd demanded sex and she refused. Byrd grabbed her from behind and began choking her; he then tied her hands behind her back, raped her, and attempted, unsuccessfully, anal sodomy.

Although Byrd claimed that the act of sexual intercourse with the victim was consensual, "the credibility of witnesses is for determination by the jury, [and] the jury was authorized to disbelieve appellant and believe the victim. Considered under the analytical framework of *Jackson v. Virginia*, [supra,] the evidence was sufficient for any rational trier of fact to find appellant guilty beyond a reasonable doubt of [rape]." (Citation omitted.) *Harmon v. State*.[3]

2. Byrd contends that his trial counsel failed to render him effective assistance because trial counsel (1) failed to object to the similar transaction evidence at trial, and (2) failed to question the medical witnesses about any evidence of genital or vaginal trauma to the victim.

Byrd's claim of ineffective assistance of counsel based on trial counsel's failure to object to the similar transaction evidence at trial was not raised in either the motion for new trial or the supplemental motion for new trial, and consequently, it was not ruled upon by the trial court. Accordingly, we will not consider this claim of ineffective assistance of counsel for the first time on appeal. *Guertin v. State*;[4] *Howard v. State*.[5]

---

[3] *Harmon v. State*, 181 Ga. App. 133, 134 (351 SE2d 527) (1986).
[4] *Guertin v. State*, 243 Ga. App. 322, 325 (2) (533 SE2d 159) (2000).
[5] *Howard v. State*, 220 Ga. App. 267, 271 (4) (469 SE2d 396) (1996).

Byrd also asserts that trial counsel's assistance was ineffective because counsel failed to question the medical witnesses about evidence of genital or vaginal trauma to the victim. Byrd argues that if trial counsel had asked about the existence of evidence of genital or vaginal trauma to the victim, and if there were no evidence of trauma to the victim, the outcome of the trial "feasibly" would have been different.

> A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. The burden was on [Byrd] to show both that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. A strong presumption exists that representation has been effective, and trial strategy and tactics do not establish ineffective assistance. In the absence of testimony to the contrary, counsel's actions are presumed strategic.

(Citations and punctuation omitted.) *Guertin*, supra at 323 (1).

Pretermitting the issue of whether trial counsel's performance was deficient, Byrd has not satisfied his burden of showing actual prejudice. Byrd "had to show that the alleged deficient performance *actually* prejudiced his case, i.e., that there was a reasonable probability the jury would have reached a different verdict absent the error of counsel." *Welch v. State*.[6] Byrd, however, presented no evidence below of what the testimony would have been concerning evidence of genital or vaginal trauma to the victim, claiming only that *if* there were no evidence of trauma, the result of his trial might have been different. Thus, his "argument of prejudice is nothing more than rampant speculation." Id. at 800 (2). As Byrd has failed to show that his defense was prejudiced by trial counsel's performance, we find no error in the trial court's denial of Byrd's motion for new trial on this ground.

3. Byrd maintains that the trial court erred in admitting irrelevant evidence. The evidence at issue consisted of several small blue containers holding an unidentified liquid. A police officer testified that he found the containers at the crime scene and that he did not know what they contained. The State tendered the containers into evidence, and the trial court admitted them over Byrd's objection. There was no testimony about what the containers were or what they contained, and the State did not tie the evidence to the case.

While this evidence appears to have no relevance to the issues before the jury, "our appellate courts have consistently adhered to

---

[6] *Welch v. State*, 243 Ga. App. 798, 799 (2) (534 SE2d 471) (2000).

the rule that an objection to the admission of evidence on the sole ground that it is irrelevant is insufficient to show error requiring reversal. Consequently, this enumeration of error is without merit." (Citations and punctuation omitted.) *Kittles v. Kittles*.[7]

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED DECEMBER 18, 2002.

*Jennifer E. Hildebrand*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney*, for appellee.

